**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NORTHEAST HOSPITAL AUTHORITY | § | |
| organized and operating as | § | |
| NORTHEAST MEDICAL CENTER | § | |
| HOSPITAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-2511 |
| | § | |
| AETNA HEALTH INC. d/b/a | § | |
| AETNA U.S. HEALTHCARE | § | |
| formerly known as | § | |
| TEXAS HEALTH NETWORK, INC. | § | |
| d/b/a PARTNERS NATIONAL | § | |
| HEALTH PLANS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

On June 13, 2006, Northeast Hospital Authority ("Northeast") sued Aetna Health, Inc.

("Aetna") in state court, asserting a claim for breach of contract based on the parties'

Hospital Agreement (the "Agreement"). Aetna filed a notice of removal on August 3, 2007.

(Docket Entry No. 1). Aetna removed on the ground that in July 2007, Northeast filed a

motion for summary judgment seeking "certain relief that is only available under the civil

enforcement provision of ERISA," 29 U.S.C. § 1001 *et seq.* Aetna removed based on ERISA

preemption. (*Id.* at 2–3). Aetna argued that Northeast's summary judgment motion made

it clear that the claim was not based on breach of the parties' Hospital Agreement. Instead,

according to Aetna, Northeast was seeking recovery of additional benefits assigned by ERISA plan participants, directly challenging "Aetna's processing and payment of plan benefits" under the terms of ERISA plans governing the claims. (Docket Entry No. 9 at 2).

Northeast has moved to remand on the basis that removal was untimely because Aetna removed more than thirty days after receiving documents that provided a basis for removal. (Docket Entry No. 5). Northeast also argues that its cause of action arises solely under state law and is neither governed nor preempted by ERISA. Aetna has responded, (Docket Entry No. 9); Northeast has replied, (Docket Entry No. 10); and Aetna has surreplied, (Docket Entry No. 11). Based on the pleadings, the motion, the responses and replies, and the applicable law, this court grants Northeast's motion to remand.[1] The reasons are explained below.

## I.   The Legal Standards

### A.   Removal

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed. 28 U.S.C § 1441. The removing party bears the burden of establishing that a state court suit is properly removable to federal court. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995). Doubts about

---

[1] Northeast also moved to strike Aetna's partial summary judgment motion, which Aetna had filed in state court before removal. (Docket Entry No. 3). Northeast argues that to the extent that Aetna sought summary judgment on claims barred by the statute of limitations, Aetna's motion is moot because Northeast does not seek recovery on those claims. Because this court grants Northeast's remand motion, Northeast's motion to strike is dismissed as moot.

the propriety of removal are to be resolved in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).

Title 28 U.S.C. § 1446 governs the procedure for removal. Section 1446(b) provides that "[t]he notice of removal ... shall be filed within thirty days after the receipt by the defendant ... of a copy of the initial pleading." 28 U.S.C. § 1446(b). The first paragraph of section 1446(b) applies to cases that are removable as initially filed; the second paragraph applies to cases that although not initially removable, later become removable. *See Johnson v. Heublein*, 227 F.3d 236, 241 (5th Cir.2000); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir.1992). The second paragraph provides:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). Under the second paragraph of section 1446(b), the thirty-day removal clock begins to run when a defendant receives a pleading, motion, or other paper that reveals on its face a basis for federal jurisdiction. *Chapman*, 969 F.2d at 164; *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994). A response to a discovery request may constitute an "other paper from which it may first be ascertained that the case is one which is or has become removable," triggering the thirty-day period of removability under § 1446(b). *See Chapman*, 969 F.2d at 164 (interrogatory answer is an "other paper"); *see also Addo v. Globe*

3

*Life and Accident Ins. Co.*, 230 F.3d 759, 761 (5th Cir.2000) (postcomplaint demand letter is an "other paper"); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996) (a transcript of deposition testimony is an "other paper").

### B.    ERISA Preemption

A civil action filed in state court is removable to federal court if the claim is one "arising under" federal law. 28 U.S.C. §§ 1331, 1441(a).   Under the "well-pleaded complaint" rule, the plaintiff is generally entitled to remain in state court if the complaint does not affirmatively allege a federal claim on its face. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). To support removal, a right or immunity created by the Constitution or federal law must be an essential element of the plaintiff's cause of action. *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10–11 (1983)).

An exception to the well-pleaded complaint rule allows removal if the case "falls within the narrow class of cases to which the doctrine of 'complete preemption' applies." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (2004), *cert. denied,* 546 U.S. 813 (2005) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)). "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* "When the federal statute completely pre-empts the state-law cause of action, a claim which comes

within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8.

Section 502(a) of ERISA, the statute's civil-enforcement provision, provides that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan. . . ." 29 U.S.C. § 1132(a). This provision has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp.*, 388 F.3d at 399–400 (quoting *Davila*, 542 U.S. at 209). State-law actions within the scope of § 502(a) are recharacterized as federal claims and are removable to federal court. *Pascack Valley Hosp.*, 388 F.3d at 399–400 (citations omitted); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). The recharacterization of a plaintiff's state-law claims provides a basis for federal removal jurisdiction. *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999).

In its most recent analysis of ERISA preemption, *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004), the Supreme Court held that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is

5

completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. at 210 (internal quotations and citation omitted).

## II.    Analysis

On June 1, 1991, Northeast and Aetna entered into an Agreement under which Northeast would provide certain hospital services to Aetna members.  On November 25, 1992, the parties amended the Agreement, effective December 1, 1992, to revise the compensation schedule.  The amendment provided that Aetna would pay Northeast for "Cardiovascular Surgery" services provided to Aetna members at "85% of charges." (Docket Entry No. 1, Ex. A, Attachment B). "Cardiovascular Surgery" included "cardiac catheterization." (*Id.*).  Northeast sued in Texas state court on June 13, 2006, alleging that Aetna had underpaid under the amended Agreement for certain cardiac catheterizations. After discovery, Northeast moved for summary judgment on July 21, 2007.  Aetna removed to federal court on August 3, 2007.

### A.    Did Aetna Timely Remove?

The parties do not dispute that service of Northeast's initial pleading did not trigger the thirty-day removal period under the first paragraph of section 1446(b).  They dispute when Aetna received "other paper from which it may first be ascertained that the case is one which is or has become removable," triggering the thirty-day removal time period under the second paragraph of section 1446(b).  The Fifth Circuit has held that "the information supporting removal in a copy of an amended pleading, motion, order or other paper must be

unequivocally clear and certain to start the time running for a notice of removal under the second paragraph of section 1446(b)." *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002).

Aetna argues that the "other paper" was Northeast's motion for summary judgment, filed on July 21, 2007, with which Northeast submitted exhibits and "an affidavit verifying the medical claims at issue and detailing [Northeast's] theory of recovery on those claims." (Docket Entry No. 9 at 10.). Northeast argues that the summary judgment exhibits that allegedly triggered Aetna's removal were produced in discovery on May 16, 2007, and that Aetna's removal on August 3, 2007 was therefore untimely.

The exhibits at issue consist of two spreadsheets, one of which was accompanied by a March 14, 2006 letter to Aetna from Northeast's counsel. The letter and accompanying spreadsheet are summary judgment Exhibit A-4. The letter explains that the spreadsheet shows "individual outpatient and inpatient cardiac catheterization claims, respectively, for which the Hospital has been underpaid by Aetna and the amount the Hospital is owed with regard to each claim." (Docket Entry No. 1, Ex. G at Attachment A-8). Northeast explains in its motion to remand that the second spreadsheet, summary judgment Exhibit A-8, is "identical" to the Exhibit A-4, except that it "applies the applicable statute of limitations." (Docket Entry No. 5 at 3). Exhibit A-4 includes 288 patient entries; Exhibit A-8 includes 134 patient entries. Both consist of eight columns, which provide the patient's name, identification number, date of admission to the hospital, and date of discharge from the

hospital; the charges for each patient's treatment; the amount paid by Aetna; the amount Northeast alleged was the correct payment for the patient's treatment; and the amount Northeast alleged was due from Aetna. (Docket Entry No. 1, Ex. G at Attachments A-4, A-8).[2]

Relying on *Bosky*, Aetna argues that Northeast's document production "hardly made it unequivocally clear that this case was removable to federal court." (Docket Entry No. 9 at 9). Aetna asserts that Northeast refused "to specifically identify to Aetna the medical claims at issue during discovery," such that when Northeast produced the spreadsheets, "buried" in 2,300 documents during discovery, Aetna would have been forced "to remove this case without the benefit of a true factual basis that could be proven by a preponderance of the evidence," as required by *Chapman*. (*Id.* at 9–10). Aetna argues that Northeast's summary judgment motion, "which was accompanied by an affidavit verifying the medical claims at issue and detailing [Northeast's] theory of recovery on those claims, provided the first instance where it was 'unequivocally clear and certain' that some of [Northeast's] medical claims in this lawsuit were preempted by ERISA." (*Id.* at 10). This affidavit was

---

[2] In its motion to remand, Northeast argued that Aetna first received the letter and spreadsheet comprising summary judgment Exhibit A-4 on March 14, 2006, before litigation began on June 13, 2006. Relying on *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164–65 (5th Cir. 1992), Aetna argued in its response that documents disclosed before the filing of an initial pleading do not constitute "other paper" for removal purposes under section 1446(b). Northeast did not contest this issue in its reply. Because the letter and spreadsheet were produced during discovery on May 16, 2007, (Docket Entry No. 5 at 3), it may qualify as an "other paper" for purposes of section 1446(b) as of that date.

provided by Vickie Hastings, the Director of Managed Care at Northeast during the relevant

time period.  The Hastings affidavit, to which Exhibits A-4 and A-8 were attached, stated:

> Although Aetna properly paid many claims for cardiac
> catheterization at 85% of billed charges, other times Aetna
> improperly underpaid these claims at a lower rate.  Specifically,
> Aetna improperly paid certain claims for cardiac catheterization
> provided in the outpatient setting at 75% of billed charges,
> rather than 85% of billed charges.  Further, Aetna improperly
> paid certain claims for cardiac catheterization provided in the
> inpatient setting at a lower per diem rate, rather than at 85% of
> billed charges.

(Docket Entry No. 1, Ex. G at Attachment A).  Aetna also argues that the spreadsheets

produced during discovery were not the same as the spreadsheets included with Northeast's

summary judgment motion.  (Docket Entry No. 11 at 6).

Northeast argues that the exhibits, when produced in discovery, constituted "other

paper" from which Aetna should have ascertained removability.  Northeast asserts that the

production of the documents in discovery triggered the thirty-day period for timely removal

and that Northeast's theories of recovery were "unequivocally clear" to Aetna during

discovery.  To support this argument, Northeast cites its October 12, 2006 response to

Aetna's disclosure request.  Aetna requested "the legal theories and, in general, the factual

basis of the responding party's claims." (Docket Entry No. 5, Ex. 6).  In response, Northeast

stated:

> Although Aetna has properly paid certain inpatient claims for
> Cardiovascular Surgery at 85% of billed charges, other inpatient
> Cardiovascular Surgery claims have improperly been paid at the
> Surgical per diem rate.  Aetna has also failed to pay Northeast

> at 85% of billed charges for certain outpatient Cardiovascular
> Surgery procedures, as specifically required by the Agreement,
> instead paying such procedures at the Outpatient Day Surgery
> rate, which is 75% of billed charges.

(*Id.*).   Aetna also requested "the amount of and any method of calculating economic

damages," to which Northeast responded:

> Northeast has conducted a claim by claim analysis of payments,
> both inpatient and outpatient, from Aetna for Cardiovascular
> Surgery services.  Because Aetna inappropriately paid certain
> inpatient claims at the Surgical per diem rate, rather than 85%
> of billed charges as require by the Agreement, Northeast has
> suffered economic damages in an amount of at least
> $850,388.72.   Further, because Aetna inappropriately paid
> certain outpatient claims at the Outpatient Day Surgery rate
> (75% of billed charges), rather than at 85% of billed charges as
> required by the Agreement, Northeast has suffered additional
> economic damages in an amount of at least $168,817.12.

(*Id.*).

Northeast also cites its response to Aetna's first set of interrogatories, dated February

20, 2007, in which Aetna asked:

> If you are seeking an award of any sum of money, whether by
> damages or otherwise, state the full amount of money you seek
> and describe the manner in which the amount was calculated.
> Your description should include each element of damage or
> component of recovery that you seek, the amount sought for
> each element or component, the manner in which each element
> or component of the calculation was determined and should
> identify the source of each number used in the calculation.

(Docket Entry No. 10, Ex. 10).  In its April 13, 2007 response, Northeast asserted that it

sought damages "in the amount of at least $1028,128, plus prejudgment interest and

reasonable attorneys' fees." (*Id.*).   Northeast then stated that it "will supplement this response by providing documentation reflecting the manner in which the amount of damages was calculated." (*Id.*).  On May 16, 2007, Northeast supplemented its interrogatory response by producing Exhibit A-8, its "claim by claim analysis of payments."  Exhibit A-4 was produced at the same time, along with 355 pages of other responsive documents providing information on the claims at issue, grouped by year and patient.  (Docket Entry No. 10, Ex. A at 1).

Aetna's argument that Northeast's motion for summary judgment "provided the first instance where it was 'unequivocally clear and certain' that some of [Northeast's] medical claims in this lawsuit were preempted by ERISA" is not supported by the record.  (Docket Entry No. 9 at 9).  Aetna argues that the Hastings affidavit submitted with Northeast's summary judgment motion "identified, for the first time, the exact medical claims at issue in this lawsuit" and the "methodology for calculating the alleged underpayments." (Docket Entry No. 11 at 5).  The record shows that during discovery Northeast identified the patients as to whom it alleged underpayments and described the basis for its claim.  The Hastings affidavit disclosed no information at the summary judgment stage that Northeast had not previously disclosed in discovery.  The affidavit explained that "[a]lthough Aetna properly paid many claims for cardiac catheterization at 85% of billed charges, other times Aetna improperly underpaid these claims at a lower rate."  (Docket Entry No. 1, Ex. G at Attachment A).  It then explained that Aetna paid for some patients' outpatient cardiac

catheterizations at 75% of billed charges and that Aetna paid for other patients' inpatient cardiac catheterizations at 85% of a lower per diem rate, rather than at 85% of billed charges for both outpatient and inpatient procedures. This "methodology for calculating the alleged underpayments" was disclosed to Aetna during discovery in responses to specific interrogatories and requests for disclosure. Northeast also described its calculation methodology in the March 14, 2006 letter to Aetna. Northeast provided specifics as to its claims for each patient in the accompanying spreadsheet, which Northeast produced during discovery on May 16, 2007. On that same day, Northeast produced a separate spreadsheet (the future summary judgment Exhibit A-8) as a supplemental interrogatory response that provided the same information for the claims that survived the applicable statute of limitations. These documents were not buried in thousands of pages during discovery, but produced in response to a specific interrogatory, along with 355 pages of other responsive documents.

Aetna's argument that the spreadsheets that Northeast produced during discovery are not identical to the spreadsheets attached to Northeast's motion for summary judgment is also unpersuasive. Aetna compares Exhibits A-1 and A-3 of Northeast's remand motion, which Northeast asserts were produced during discovery, with Exhibit A-8 of Northeast's summary judgment motion. Aetna points out that the number of entries do not match between the two spreadsheets produced during discovery and the spreadsheet included in the motion for summary judgment. However, Exhibit A-1 of Northeast's motion to remand is a spreadsheet

identical to the spreadsheet included in Exhibit A-4 of Northeast's summary judgment motion.  In its motion to remand, Northeast explained that this spreadsheet includes all of Northeast's claims for underpayment, and that the shorter spreadsheet included in Exhibit A-8 lists only those claims that survived the applicable statute of limitations.  (Docket Entry No. 5 at 3).  Northeast asserts that the spreadsheet marked as Exhibit A-8 of its summary judgment motion was produced on May 16, 2007 as a supplemental response to Aetna's February 20, 2007 interrogatory.  Aetna has not shown that Northeast's motion for summary judgment provided new information, beyond what Northeast had already produced in discovery, that made the basis for removal "unequivocally clear and certain" for the first time.

Aetna also argues that the Hastings affidavit verified for the first time that Northeast "was seeking damages against Aetna on the Patients' assigned medical claims."  (Docket Entry No. 11 at 5).  This argument suggests that ERISA preemption based on Northeast's alleged assertion of its right to additional payment as an assignee of an ERISA plan beneficiary was not clear until Northeast's summary judgment motion.  This argument, however, relies on a misreading of the Hastings affidavit.  The Hastings affidavit makes no mention of "assignment" of patients' medical claims.  It only reiterates Northeast's argument that Aetna underpaid Northeast for certain cardiac catheterizations, either by paying 75% instead of 85% of outpatient billed charges, or by paying 85% of a lower per diem rate instead of 85% of billed charges for inpatient procedures.

As the removing party, Aetna bears the burden of establishing that Northeast's state-court suit was properly removable to federal court. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995). Aetna does not dispute the dates of Northeast's discovery responses and document production, but instead argues that the basis for removal was not "unequivocally clear and certain" until Northeast provided in its summary judgment motion the same documents it had produced earlier during discovery. Aetna has failed to show that its receipt of the spreadsheets during discovery was not the receipt of "other paper" triggering the thirty-day period for timely removal. Because Aetna removed more than thirty days after receiving during discovery the spreadsheets and other information that provided the basis for removal, its removal was not timely.

**B.     Are Northeast's claims preempted by ERISA?**

Even if Aetna had prevailed in showing that it did not receive "other paper" triggering the thirty-day removal period until Northeast filed its summary judgment motion on July 21, 2007, this court lacks jurisdiction. The record shows that Northeast's breach of contract claims are not preempted by ERISA.

Aetna asserts that Northeast submitted payment claims for three patients covered by ERISA employee welfare benefit plans. Because the terms of these patients' ERISA plans control what charges are billable, Aetna contends that it properly paid Northeast 85% of the ERISA billed charges and that Northeast therefore has no breach of contract claim against Aetna as to these patients. Aetna argues that to the extent that Northeast seeks additional

14

payment, Northeast is seeking benefits that are not covered under the patients' ERISA plans and that exceed 85% of covered charges.  Aetna argues that Northeast's breach of contract claims actually represent a direct attack on "Aetna's benefits determinations made under the terms of those ERISA plans.  This type of claim is derivative of the Patients' rights under their respective Plans and directly falls within the scope of the civil enforcement provision of ERISA." (Docket Entry No. 11 at 19).  Aetna cites *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999), for the proposition that even one claim preempted by ERISA is sufficient for removal jurisdiction over an entire case.

In response, Northeast notes that the Supreme Court held in *Davila* that ERISA preempts a state-law claim only if the plaintiff "could have brought its state law claims under ERISA § 502(a)(1)(B)" and if "there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210.  Northeast relies on *Memorial Hermann Hosp. Sys. v. Aetna Health Inc.*, No. 06-0828, 2007 WL 1701901, at *10 (S.D. Tex. June 11, 2007), in which the court found that a health-care provider's breach of contract claims were not claims for ERISA benefits and were therefore not preempted.  Northeast maintains that it is asserting a cause of action for breach of its Hospital Agreement with Aetna, and that this cause of action is independent of ERISA.  Because Aetna did not respond to interrogatories from Northeast, asking Aetna to detail payments for cardiac catheterizations and whether and why Aetna believed such payments complied with the Agreement, Northeast argues that it could not have known that Aetna claimed that the ERISA patients' procedures had been

15

properly paid at 85% of billed charges under the patients' plans.  Conceding that "to the extent claims for the [ERISA] Patients were actually paid by Aetna at 85% of billed charges . . . such claims were properly paid," (Docket Entry No. 10 at 5), Northeast asserts that "the allegedly improper inclusion of claims pertaining to the [ERISA] Patients in its damage calculation merely decreases the amount of damages to which Northeast is entitled," (*id.* at 5).

Under *Davila*, ERISA preempts a cause of action if "at some point in time" an individual "could have brought his claim under ERISA § 502(a)(1)(B)" and if "there is no other independent legal duty that is implicated by a defendant's actions."  542 U.S. at 210. Courts applying *Davila* have found that no there is no ERISA preemption when a health-care provider sues an insurance company to assert contract claims that exist independently of ERISA.  The Third Circuit, for example, found no preemption in *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004).  The plaintiff in that case was a hospital that had agreed to accept discounted payment for medical services provided to subscribing health plan participants and beneficiaries.  The hospital entered into this discounted payment contract with a preferred provider organization, which in turn entered into agreements with various plans.  Under the contract, ERISA-regulated plans had to pay the hospital for "covered services" rendered to "eligible persons" within a certain period or the discounted rate for those services would be forfeited.  388 F.3d at 396. The hospital submitted claims for payment for services provided to two ERISA patients.  The

16

defendant plan paid the discounted rate. The hospital sued the plan for breach of contract on the ground that the payment had been made after the limited time allowed and had been improperly discounted. The plan removed to federal court and the hospital moved to remand. In determining whether the hospital's claims were completely preempted by section 502 of ERISA, making removal proper, the Third Circuit applied the *Davila* test. The court first concluded that because the hospital was neither a "participant" nor a "beneficiary" under the plan, it could not have brought its claims under ERISA. The court declined to resolve whether, as a matter of law, the hospital could have obtained section 502(a) standing by virtue of an assignment from the participant or beneficiary because there was no evidence indicating that such an assignment had actually occurred. *Id.* at 400–01. The court concluded that the hospital's state-law claims were predicated on a legal duty independent of ERISA. The court acknowledged that the hospital's claims derived from an ERISA plan and existed "only because" of that plan. *Id.* at 402 (quoting *Davila*, 542 U.S. at 210). The "crux" of the dispute, however, was the meaning of a section of the managed-care contract, which governed the rates of payment for "Covered Services furnished to Eligible Persons." The court noted that if the parties had disputed coverage and eligibility, "interpretation of the Plan might form an 'essential part' of the Hospital's claims." *Id.* at 402. The record did not support that view of the dispute, leading the court to conclude that resolution of the lawsuit would require interpretation of the managed-care contract, not the ERISA plan. "The

Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." 388 F.3d. at 402.

The *Pascack Valley Hospital* court found instructive the Ninth Circuit's decision in *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999). In that case, the court held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not completely preempted under ERISA. *Id.* at 1047. The court reached this conclusion even though the medical providers had obtained assignments of benefits from beneficiaries of the ERISA-covered health care plans. *Id.* at 1052. In *Anesthesia Care Associates*, the health care plan defendant attempted to change the fee schedule of the provider agreement it had with the health care provider plaintiffs. The providers sued, alleging a breach of contract. The Ninth Circuit held that "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient–assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)." *Id.* at 1050. The court explained:

> The Providers are asserting contractual breaches . . . that their patient–assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross. The dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements. Because the providers asserted "state law claims arising out of separate agreements for the provision of goods and services," the court found "no basis to conclude that the mere fact of assignment

> converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan.

*Id.* at 1052 (internal quotations and citations omitted).

The Third Circuit found important similarities between the facts of *Pascack Valley Hospital* and the facts of *Anesthesia Care Associates*: "(1) the Hospital's claims in *Pascack Valley Hospital* arise from the terms of a contract—the Subscriber Agreement—that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) 'the dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Hospital, but the *amount*, or level, of payment, which depends on the terms of the Subscriber Agreement.'" 388 F.3d at 403–04 (quoting *Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d at 1051) (alterations and emphasis in original).

In contrast, courts applying *Davila* have found that when an ERISA plan participant has sued to assert his plan rights, ERISA preemption applies. For example, in *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005), the court considered a plan participant's claims arising out of his ERISA insurer's refusal to reimburse him for emergency medical care. The Ninth Circuit affirmed the district court's preemption finding, emphasizing that "the only factual basis for the relief pleaded in the complaint is the refusal of Blue Shield to reimburse plaintiff for the emergency medical care he received. Any duty or liability that Blue Shield had to reimburse him 'would exist here only because of Blue Shield's administration of ERISA-regulated benefits plan. . . . Plaintiff's claim therefore cannot be

regarded as independent of ERISA." 408 F.3d at 1226. Similarly, in *Land v. Cigna Healthcare of Florida*, 381 F.3d 1274 (11th Cir. 2004), the Eleventh Circuit considered a plan participant's suit against his ERISA plan administrator, alleging negligence in the care and treatment of an illness. The court held that ERISA § 502(a)(1)(B) completely preempted the plaintiff's state-law causes of action under *Davila*'s holding that "the duties imposed by state law regarding the handling of coverage decisions did not arise independently of ERISA or the terms of the plans in question." 381 F.3d at 1274.

In the present case, the first question under the *Davila* complete preemption test is whether Northeast is asserting a claim that it could have brought under section 502(a)(1)(B) of ERISA. *Davila*, 542 U.S. at 210; *see also St. Luke's Episcopal Hosp. v. Acordia Nat'l*, 2006 WL 3093132, 39 EBC 1114, 1122 (S.D. Tex. June 8, 2006). A hospital has standing to sue under section 502(a) as an assignee of a participant or beneficiary in order to claim plan benefits. *See Pascack Valley Hosp.*, 388 F.3d at 400 n.7; *Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286, 1289 (5th Cir. 1999).

The record is unclear as to whether Northeast received assignments that would give it standing to sue under ERISA. However, even if Northeast did receive such assignments from its ERISA patients, the assignment itself does not result in complete preemption of the hospital's claim because complete preemption under § 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim. *Davila*, 542 U.S. at 210. A legal duty is not independent of ERISA if it "derives entirely from the particular rights and

20

obligations established by ERISA benefit plans." *Id.*; *see generally Mem'l Hermann Hosp. Sys. v. Great-West Life & Annuity Ins. Co.*, No. Civ. A. H-05-1234, 2005 WL 1562417 (S.D. Tex. June 30, 2005).

As in *Pascack Valley Hospital* and *Anesthesia Care Associates*, the crux of the parties' dispute in this case arises from the terms of a contract—the Hospital Agreement—that is independent of the ERISA patients' plans; the ERISA patients are not parties to the Hospital Agreement; and parties dispute the level, rate, or amount of payment, not the right to payment. Northeast does not challenge Aetna's benefits determinations under the patients' ERISA plans. Nor does Northeast challenge the scope of the plans' coverage. Unlike *Cleghorn*, Northeast's alleged rights to 85% of billed charges for the cardiac catheterizations it performed do not exist only because of Aetna's administration of an ERISA-regulated benefits plan. 408 F.3d at 1226. Rather, Northeast asserts rights that arise out of the parties' contract and argues only that Aetna failed to pay 85% of billed charges for cardiac catheterizations, as allegedly required under the parties' Hospital Agreement. Northeast's right to recovery, "if it exists, depends entirely on the operation of third-party contracts executed by the [parties] that are independent" of the patients' ERISA plans. *Pascack Valley Hospital*, 399 F.3d at 402.

Aetna argues that the Fifth Circuit and the Southern District of Texas "have repeatedly held that ERISA preempts a health care provider's state law claims when the substance of the claim is the improper processing or denial of assigned medical claims." (Docket Entry

21

No. 9 at 15).  However, all but one of the cases on which Aetna relies were decided before *Davila*.  Unlike Northeast, moreover, the plaintiff health-care providers in all the cases on which Aetna relies did not have preexisting contractual agreements or agreed fee schedules with the ERISA plan administrator defendants.  In the pre-*Davila* cases, the plaintiff hospitals sued the defendant for misrepresenting to the hospital that a given patient had medical insurance coverage.  *See Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, 164 F.3d 952 (5th Cir. 1999) (plaintiff hospital alleged that the defendants misrepresented that a patient's ERISA plan would reimburse the plaintiff for 100% of the patient's medical bills before the plaintiff admitted the patient for treatment); *Mem'l Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990) (plaintiff hospital alleged that the defendant insurance company misrepresented that a patient had coverage before the hospital provided treatment); *St. Luke's Episcopal Hosp. Corp. v. Stevens Transp., Inc.*, 172 F.Supp. 2d 837 (S.D. Tex. 2001) (plaintiff hospital alleged that defendant insurance company misrepresented patient's health insurance coverage before hospital treated patient).  In the post-*Davila* case, the plaintiff hospital disputed whether a treatment of high-dose antibiotics was covered under the plan's terms.  *See Mayeaux v. La. Health Serv. and Indem. Co.*, 76 F.3d 420 (5th Cir. 2004) (plaintiff hospital sued ERISA plan administrator for failing to pay for patient's high-dose antibiotic treatments under the plan's coverage of "investigational" services).

Northeast does not argue that Aetna misrepresented the validity, existence, or scope of the ERISA patients' coverage under their respective benefit plans. Nor does Northeast or Aetna dispute whether the terms of the ERISA patients' plans covered cardiac catheterization. The substance of Northeast's claim against Aetna is not "the improper processing or denial of assigned medical claims," as Aetna argues. The substance of Northeast's claims is that for certain patients, Aetna paid only 75% of billed charges for outpatient cardiac catheterizations, and 85% of a lower per diem rate for inpatient cardiac catheterizations. These claims arise out of the terms of the parties' Hospital Agreement, not the terms of the ERISA patients' benefits plans.

ERISA does not preempt Northeast's breach of contract claims. This court does not have subject matter jurisdiction over this case.

## III. Conclusion

Northeast's motion to remand is granted. This case is remanded to the 333rd Judicial District Court of Harris County, Texas.

SIGNED on October 17, 2007, at Houston, Texas.

_Lee H. Rosenthal_

Lee H. Rosenthal
United States District Judge